**JUDGE HERB ROSS (Recalled)**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA**
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2296 - (Website: www.akb.uscourts.gov)
Clerk's Office 907-271-2655 (1-800-859-8059 In-State) - Judge's Fax 907-271-2692

**Filed On 6/13/05**

| | |
|---|---|
| In re<br><br>KIMBERLY JEAN ADEE,<br><br>Debtor(s) | Case No. A04-01481-HAR<br>In Chapter 7 |
| CHASE MANHATTAN BANK, USA, NA,<br><br>Plaintiff(s)<br>v.<br>KIMBERLY JEAN ADEE,<br><br>Defendant(s) | Adv Proc No A05-90003-HAR<br><br>SUPPLEMENTAL AUTHORITY<br>FOR JUDGMENT FOR PLAINTIFF<br>[Preference Issue] |

1. INTRODUCTION AND FACTUAL BACKGROUND- The court entered its oral findings of fact and conclusions of law on the record, granting judgment for plaintiff in this § 523(a)(2)(A) nondischargeability action at the conclusion of the trial on June 10, 2005.[1]

Defendant all but admitted that the $5,700 balance transfer advance she took from Chase Manhattan was nondischargeable because she obtained it after consulting with a bankruptcy lawyer and just before she filed bankruptcy, never intending to repay it, and hoping to discharge it in this bankruptcy proceeding.

This memorandum is to supplement those findings with regard to the issue that defendant attempted to raise as an offset or counter-claim due to an alleged preference by Chase Manhattan arising out of a prior balance transfer of $5,700 from Chase Manhattan to GMAC which occurred a month before the bankruptcy. I orally ruled that the defense or claim for offset was no good.

---

[1] *See*, 4 *Collier on Bankruptcy*, ¶ 523.08 [1] [e] (15th ed rev 2005).

The facts are:

- Debtor had a credit card account with Chase Manhattan which had a high interest rate which the bank refused to lower.  On about **November 30, 2004**, she and her husband (a nondebtor) arranged a balance transfer of **$5,700** to GMAC, for a new credit card account on which she was not liable and which was to be in the name of her husband alone.  This still left a balance of less than $500 due from the debtor to Chase Manhattan after the $5,700 balance transfer to GMAC.

- She testified that this was done without her husband's complete understanding and that he never wanted to go through with the transaction.  The transaction nevertheless closed and could not be unwound despite his and the debtor's alleged protests.

- She saw a bankruptcy attorney some time shortly **before December 28, 2004**, and the lawyer started preparing to file a chapter 7.[2]

- **On December 28, 2004**, she arranged for a balance transfer of **$5,700** from GMAC back to Chase Manhattan, which was added back to her existing Chase Manhattan account balance of less than $500.  She acknowledges that she never intended to pay this, but intended to discharge it in the bankruptcy.  It is unclear how she arranged this transfer since the account was in the sole name of her husband.

- On **December 31, 2004**, she filed this chapter 7 case.

2.  DEBTOR'S RIGHT TO CLAIM A PREFERENCE OFFSET IS LIMITED TO HER REMAINING EXEMPTION OF $2,940-  Debtor argues that she is entitled to recover a preference against Chase Manhattan, apparently as a result Chase Manhattan's receiving $5,700 as a result of the November 30, 2004, balance transfer to GMAC.

I ruled that the debtor had not adequately pleaded a "preference."  She never labeled her pleading as a counter-claim or indicated that she, herself, was seeking a setoff for a preference that the trustee did not himself pursue in aid of her exemption rights.  Instead her answer alleged that: (a) the transfer was a preference in favor of Chase Manhattan; (b) other creditors were hurt by the "preference;" (c) she implemented the December 28th retransfer to Chase Manhattan to undo the preference; (d) had she not done this, the trustee could have filed a preference action; (e)

---

[2] *See*, 4 *Collier on Bankruptcy*, ¶ 523.08 [6] (15th ed rev 2005) (seeing a bankruptcy lawyer about the time of incurring the debt is an indicia of fraud or the intent not to repay).

SUPPLEMENTAL AUTHORITY FOR JUDGMENT
FOR PLAINTIFF  [Preference Issue]                                                                                                  Page 2 of 6

the trustee was an indispensable party; and, (f) should Chase Manhattan prevail, the money debtor would owe should go the trustee, not Chase Manhattan.[3]  This answer does not ask for a preference to benefit the debtor, herself.  Nonetheless, I will give the benefit of a doubt to this careless pleading, and assume debtor intended to offset any judgment against her with the trustee's unused preference rights.

The statute which the debtor was apparently relying on is 11 USC § 522(h), which allows the debtor to prosecute a preference action, if the trustee does not attempt to do so for the benefit of the estate, to the extent this will provide funds or property which the debtor may use toward her exemption.  Since the main bankruptcy case is closed and the trustee has not attempted to recover a preference against Chase Manhattan, § 522(h) is available to the debtor.  How much benefit can the debtor realize if her § 522(h) preference offset prevails?

She has chosen the federal exemptions and has no residence.  Thus, she is entitled to $925, plus $8,275, or a total of $9,650 for a pour-over exemption.[4]  She has already claimed $6,710 in pour-over exemptions under § 522(d)(5), so only has $2,940 excess to play with.[5]  Debtor's counsel never even addressed this issue.

And, the debtor has not even claimed an exemption yet in the Chase Manhattan transfer in which she asserts a preference, but assuming she could amend her exemptions, the maximum she could claim is $2,940 and Chase Manhattan would be entitled to a judgment of at least $2,760, even assuming the preference defense has merit.  But, it does not.

---

[3] *See*, answer at Dkt 5, paragraphs 5.3 - 5.7.

[4] 11 USC § 522(d)(5).

[5] These calculations are from debtor's claim of exemption in Schedule C of the schedules found at Dkt. 1 in the main case.

SUPPLEMENTAL AUTHORITY FOR JUDGMENT
FOR PLAINTIFF  [Preference Issue]                                                                                          Page 3 of 6

**3. THERE WAS NO PREFERENTIAL TRANSFER-** There are six elements to a preference. These are set out in 11 USC § 547(b).[6] One of them is that there must have been a transfer of the property of the debtor. There has been no transfer of debtor's property arising from the November 30, 2004, balance transfer in this case which could possibly be the subject of a preference under § 547(b). Without establishing this element, she cannot prove a preference.

In fact, the debtor was ahead financially because of the November 30, 2004, balance transfer, not behind. Before the balance transfer of $5,700 from Chase Manhattan to GMAC on November 30, 2004, she owed Chase Manhattan a little less than $6,200. After the balance transfer *to an account at GMAC on which she was not liable, she owed GMAC nothing and Chase Manhattan less than $500.* She did not transfer property which she owned or possessed on November 30th. Instead, she shed one debt and did not take on a compensating debt. Her financial position improved by $5,700 through what was essentially a gift from her husband by his taking over $5,700 of her Chase Manhattan debt through *his* cash advance loan from GMAC.

The concept is stated succinctly in *Collier*:[7]

> The fundamental inquiry is whether the transfer diminished or depleted the debtor's estate. Generally, a transfer of money or property owned by a third person to a creditor of a debtor is not a preference. Thus, payments made by an indorser, surety or guarantor are not preferential because there is no transfer of the debtor's property.

But, debtor argues that GMAC jumped the gun and did this without authority (a claim which is extremely suspect under the facts of this case). In the bankruptcy context, this is no skin off her teeth – she was better off financially (as a separate individual) after the $5,700 was taken off her back and put on the back of her nondebtor spouse.[8]

---

[6] 5 *Collier on Bankruptcy*, ¶ 547.03 (15th ed rev 2005).

[7] 5 *Collier on Bankruptcy*, ¶ 547.03[2] (15th ed rev 2005) [footnotes omitted]; *see, also*, In re Superior Stamp & Coin Co., Inc., 223 F3d 1004, 1007 (9th Cir 2000).

[8] The testimony was that his credit was worse than hers, so how this all happened is a mystery.

SUPPLEMENTAL AUTHORITY FOR JUDGMENT
FOR PLAINTIFF [Preference Issue]                                                                                    Page 4 of 6

Even assuming that debtor was liable jointly with her husband to GMAC on the November 30, 2004, credit card balance transfer, there would be no preference under the "earmarking doctrine." This doctrine, as applied in the 9th Circuit, is explained in In re Superior Stamp & Coin, Inc.:[9]

> Thus, we have held that the earmarking doctrine applies "when a third party lends money to a debtor for the specific purpose of paying a selected creditor." *In re Kemp*, 16 F.3d at 316 (quoting In re Smith, 966 F.2d at 1533); *see also In re Bohlen*, 859 F.2d at 566 (holding that the earmarking doctrine requires: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; (3) the transaction viewed as a whole ... does not result in any diminution of the estate.[3]") "A key inquiry" in the analysis of whether a third party transfer is voidable is the source of control over the new funds:
>
>> If the debtor controls the disposition of the funds and designates the creditor to whom the monies will be paid independent of a third party whose funds are being used in ... payment of the debt, then the payments made by the debtor to the creditor constitute a preferential transfer.
>
> *In re Kemp*, 16 F.3d at 316 (emphasis added) (citation omitted). Here, the bankruptcy court held that the transfer was voidable on the ground that Superior, rather than the bank, "controlled" the borrowed funds. The court reached this conclusion because (1) the bank did not pay Adams directly, and (2) Superior requested the loan in order to pay Adams. These facts do not, however, serve to render the earmarking doctrine inapplicable.
>
> * * *
>
> Accordingly, the proper inquiry is not whether the funds entered the debtor's account, but whether the debtor had the right to disburse the funds to whomever it wished, or whether their disbursement was limited to a particular old creditor or creditors under the agreement with the new creditor.

There are some bankruptcy court cases involving credit card balance transfers, or debtors using convenience checks to transfer the balance of one credit card company to another,[10] which reach the opposite result and deny the application of the earmarking doctrine, but their holdings

---

[9] In re Superior Stamp & Coin Co., Inc., 223 F3d at 1008-9 [footnote omitted].

[10] In re Anderson, 275 BR 264, 265-66 (Bankr WD Ky 2002); In re Adams, 240 BR 807, 811 (Bankr D Me 1999); In re Getman, 218 BR 490, 492-94 (Bankr WD Mo 1998); In re Spitler, 213 BR 995, 998-99 (Bankr ND Ohio 1997); In re Hurt, 202 BR 611 (Bankr CD Ill 1996).

SUPPLEMENTAL AUTHORITY FOR JUDGMENT
FOR PLAINTIFF  [Preference Issue]                                                                                           Page 5 of 6

appear to be contrary to the 9th Circuit authority on the earmarking doctrine, particularly on the issue of what is meant by "control."

4. CONCLUSION- The debtor procured a $5,700 advance from Chase Manhattan several days before bankruptcy, after seeing a bankruptcy lawyer, with no intent to repay. That makes the claim nondischargeable.

There is no offset due to a preference since there was no preference. There was no transfer of debtor's property on November 30, 2004, when $5,700 of debtor's Chase Manhattan credit card balance was transferred to a GMAC credit card in her husband's sole name.

Even assuming debtor was jointly liable on the GMAC account, Chase Manhattan's receipt of $5,700 is subject to the earmarking doctrine defense to a preference claim. Finally, even if a preference were provable, it would be limited to the $2,940 exemption balance available.

This is not the case of an honest debtor being denied a fresh start vis-a-vis the $5,700 claim. This is a debtor who attempted to manipulate matters, once she knew she was going to file bankruptcy, in order to relieve her husband of the $5,700 obligation which he had recently assumed, and stick it on the back of Chase Manhattan. Chase Manhattan is well justified in its claim that this should not be allowed and that the claim is nondischargeable.

DATED: June 10, 2005

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

Serve:
David Bundy, Esq., for π
Jeff Carney, Esq., for ∆

Peggy Gingras, Adv. Proc. Mgr.
US Trustee                                    D5416

6/13/05

SUPPLEMENTAL AUTHORITY FOR JUDGMENT
FOR PLAINTIFF [Preference Issue]                                    Page 6 of 6